'FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 AUG 21  PM 3: 28

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTRAL GULF TOWING, INC. AND BOSTON OLD COLONY INSURANCE COMPANY | CASE NUMBER    00-0305 |
| V. | SECTION    "F" |
| BEAN HORIZON CORPORATION | MAGISTRATE    3 |

## MOTION FOR SUMMARY AND/OR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes defendant/counterclaimant, Bean Horizon L.L.C. (hereinafter "Bean"), and moves for summary and/or declaratory judgment on the grounds that there are no material facts at issue in this case, and the underlying uncontested facts establish that Bean is entitled to judgment as a matter of law dismissing the claims asserted by plaintiffs, Central Gulf Towing, Inc. (hereinafter "Central Gulf") and Boston Old Colony Insurance Company ("Boston Old Colony") and declaring that Bean is entitled to insurance coverage from Boston Old Colony for the underlying third party claims for property damage that have been asserted against Bean.

Respectfully submitted,

_____
ANDRÉ J. MOULEDOUX, T.A. (#9778)
DANIEL J. HOERNER (#21706)
MOULEDOUX, BLAND, LEGRAND &
BRACKETT, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 595-3000
Facsimile:  (504) 522-2121
Attorneys for defendant/counterclaimant,
Bean Horizon L.L.C.
H:\0355\00121 Central Gulf\Pleads\msj-declaratory.wpd

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CENTRAL GULF TOWING, INC. AND BOSTON OLD COLONY INSURANCE COMPANY | CASE NUMBER | 00-0305 |
| V. | SECTION | "F" |
| BEAN HORIZON CORPORATION | MAGISTRATE | 3 |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the above and foregoing Motion for Summary and/or Declaratory Judgment filed by defendant/counterclaimant, Bean Horizon L.L.C., will be brought on for hearing before the United States District Judge Martin L.C. Feldman, at 501 Magazine Street, New Orleans, Louisiana on Wednesday, September 5, 2001 at 10:00 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

ANDRÉ J. MOULEDOUX, T.A. (#9778)
DANIEL J. HOERNER (#21706)
MOULEDOUX, BLAND, LEGRAND &
BRACKETT, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
Attorneys for defendant/counterclaimant,
Bean Horizon L.L.C.
H:\0355\00121 Central Gulf\Pleads\msj-declaratory.wpd

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| CENTRAL GULF TOWING, INC. AND BOSTON OLD COLONY INSURANCE COMPANY | CASE NUMBER | 00-0305 |
|---|---|---|
| | SECTION | "F" |
| V. | | |
| BEAN HORIZON CORPORATION | MAGISTRATE | 3 |

## **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY AND/OR DECLARATORY JUDGMENT**

**MAY IT PLEASE THE COURT:**

### **INTRODUCTION**

Defendant/counterclaimant, Bean Horizon L.L.C. (hereinafter "Bean"), submits this memorandum in support of its Motion for Summary and/or Declaratory Judgment. The granting of this Motion shall dispose of all claims at issue in this action, including the claims, demands and causes of action asserted against Bean by plaintiffs, Boston Old Colony Insurance Company (hereinafter "Boston Old Colony") and Central Gulf Towing, Inc. (hereinafter "Central Gulf"), as well as Bean's counterclaim against Boston Old Colony.

Page -1-

As outlined below, the uncontested facts of this case show that Bean is an additional assured under a policy of insurance issued by Boston Old Colony which policy covers the underlying third party property damage claims asserted against Bean, in connection with work being performed by Bean and Central Gulf. However, Boston Old Colony has denied Bean's demand for coverage, and Boston Old Colony and Central Gulf initiated this declaratory judgment suit arguing that certain provisions contained in a towage contract between Bean and Central Gulf preclude Bean from being covered under the Boston Old Colony policy.

Boston Old Colony and Central Gulf's position is without merit. The applicable law recognizes that the coverage under the Boston Old Colony policy, which unquestionably insures Bean as an additional assured for the underlying claims, overrides the alleged limiting provisions of the Central Gulf/Bean towage contract. Accordingly, Bean is entitled to judgment, as a matter of law, regarding its entitlement to insurance coverage under the Boston Old Colony policy and a dismissal, with prejudice, of the complaint for declaratory relief brought against it by Boston Old Colony and Central Gulf. Bean specifically prays for a Judgment recognizing its entitlement to a defense and indemnity from Boston Old Colony under its policy for the property damage claims asserted against Bean, as well as recovery of attorneys' fees, costs and statutory penalties for having to defend and pursue the claims in this action due to Boston Old Colony's wrongful denial of coverage.

## FACTUAL BACKGROUND

### The Contract Between Central Gulf and Bean:

In 1998, Bean was hired by Martin County, Florida to perform work involving the dredging of the St. Lucie Inlet and restoration of the Jupiter Island Beach (hereinafter referred to as the "Florida Project"). (See Affidavit of William D. Hoffman, attached hereto as Exhibit "A".) In furtherance of this work, Bean entered into a Charter and Towing Agreement (hereinafter the "Charter Agreement") with Central Gulf, whereby Central Gulf agreed to provide tugboats and personnel to transport and work with Bean's dredge and support equipment. (See Central Gulf Towing, Inc. Charter and Towing Agreement, attached hereto as Exhibit "B".) The Charter Agreement required both Bean and Central Gulf to obtain certain types of insurance which would afford coverage to both parties. (See Exhibit "B" at paragraphs 10 and 11.)

### Bean is an Additional Assured under the
### Boston Old Colony Insurance Policy:

Central Gulf obtained coverage from Boston Old Colony under a policy identified as Policy No. H814628 (Excerpts from that policy are attached hereto *in globo* as Exhibit "C".)[1] That policy afforded coverage for a period of May 9, 1998 to May 9, 1999 (See Exhibit "C" at p. 1.) The same policy was renewed for the period of May 9, 1999 to May 9, 2000.

---

[1]     Due to the voluminous pages of the lengthy policy which bear no relevance to this litigation, Bean attaches only excerpts from Boston Old Colony's Policy No. H814628. The excerpts have been paginated in connection with this Motion for reference purposes. A complete copy of the policy will be furnished to the Court if it desires to review the policy in its entirety.

(Excerpts from the renewal policy, which are virtually identical to the excerpts from the 1998 - 1999 policy, are attached hereto as Exhibit "D".)[2]  Thus, the Boston Old Colony Policy No. H814628, was in effect during Bean's and Central Gulf's undertakings on the Florida Project.

Boston Old Colony and Central Gulf do not dispute that Bean qualifies as an additional assured under Boston Old Colony's Policy No. H814628[3].  Boston Old Colony admits Bean's additional assured status in its "Third Defense" in its Answer to Counterclaim wherein it acknowledges that Bean is an additional assured under its policy.

Bean's status as an additional assured is further evidenced by the Certificates of Insurance issued to Bean by Coastal Insurance Services, Inc., the producer of the Boston Old Colony policies.  (See Certificates of Insurance for the 1998 - 1999 policy and 1999 - 2000 policy, attached hereto as Exhibits "E" and "F" respectively.) The "Remarks" section of the Certificates confirms that while Central Gulf's vessels are working for Bean, Bean

---

[2]     See footnote number 1.

[3]     Boston Old Colony's policy extended coverage to Bean, as reflected in its Contractual Liability Extension clause.  That part of the policy provides, in pertinent part, as follows:

> Subject otherwise to all the terms, conditions and limitations of the policy, **this policy is extended to insure contractual liability of the Insured [Central Gulf]** arising out of Hold Harmless and/or Indemnity Agreements contained in such contracts as have been or may be entered into by the Insured for furnishing of insured vessels' services **and naming such parties, their affiliates, and/or subsidiaries and/or interrelated companies as additional assureds** and waiving subrogation rights only in respect of the insured vessel(s) employed by or actually working for named additional assured, their affiliates and/or subsidiaries and/or interrelated companies.

(See Exhibit "C" at p. 12, paragraph 2, and Exhibit "D" at p. 15, paragraph 2.)  (*emphasis added*)

Page -4-

is an additional assured in connection with such operations, and Boston Old Colony waives

all rights of subrogation as against Bean. (See Exhibits "E" and "F").

Bean also obtained insurance coverage pursuant to its obligations under the Charter

Agreement. (See excerpts from Bean Horizon Corporation Marine Insurance Package,

attached hereto *en globo* as Exhibit "G".)[4] But importantly, the Boston Old Colony policy,

by its own terms, affords **primary** coverage to Bean, irrespective of any other insurance

Bean may have in place. In this regard, the Boston Old Colony policy expressly states as

follows:

> GENERAL CONDITIONS
>
> . . .
>
> 7.     PERMISSIONS:
>
> Permission is granted to charter.
>
> "Other than Owner" Clause deemed to be deleted.
>
> **This policy deemed primary to additional insured's policy.**

(See Exhibit "C" at p. 13 and Exhibit "D" at p. 16.) (*emphasis added*)

Additionally, Bean's policy specifically states that its coverage shall only be deemed

to be in excess of any insurance under which Bean is an additional assured:

> If at the time of charter the Named Assured requires the
> Charterer to effect insurance for the account of the Named
> Assured and Charterer, such insurance shall be primary, but
> this policy shall nevertheless remain in effect as an excess

---

[4]     Like the Boston Old Colony policies, Bean's insurance policy is lengthy, and only excerpts are furnished herewith. However, if the Court wishes to review the entire policy, Bean will promptly furnish same.

Page -5-

> and/or difference in conditions cover for the account of the
> Named Assured only.

(See Exhibit "G" at p. 7 of 88.)  This provision of Bean's policy is often referred to as an

"other insurance" clause, and is valid and enforceable.  *Viger v. Geophysical Services, Inc.*,

338 F. Supp. 808, 811-12 (W.D. La. 1972), *aff'd*, 476 F. 2d 1288 (5th Cir. 1973); *Layton v.

Land and Marine Applicators, Inc.*, 522 F. Supp. 679 682, n.3 (E.D. La. 1981).  In those

cases, the courts recognized the validity and enforceability of the "other insurance"

provisions of the subject policies which contained language similar to that contained in

Bean's policy.  Therefore, Boston Old Colony's policy, as Bean's primary insurance,  must

respond to covered liabilities before any coverage is owed under any other insurance

obtained by Bean.  The underlying property damage claims do not exceed the limits of

coverage under Boston Old Colony's policy.


## Boston Old Colony Policy Covers Underlying Property Damage Claim:

On April 7, 1999, Martin County, Florida issued written notice to Bean regarding

alleged property damage resulting from or arising in connection with work on the Florida

Project.  (See Exhibit "A")  More specifically, the Florida Department of Environmental

Protection ("State of Florida") claimed that areas of seagrass were damaged as a result of

prop wash from Central Gulf's towing vessels and that mangroves were damaged by

barges or dredge equipment that was being maneuvered by Central Gulf's towboats during

the project.  (See Exhibit "A").

The Boston Old Colony policy provides coverage for both hull and protection and

indemnity risks. Coverage for the claims asserted against Bean by the Florida Department

of Environmental Protection can be found under both types of coverage.

## Coverage under Boston Old Colony Hull Policy:

The hull insurance under the Boston Old Colony policy expressly provides coverage

for property damage.    This coverage is found in the "MARINE OPERATOR'S/

CHARTERER'S LIABILITY" clause, which provides as follows:

1. **To cover the Named Assured's liability for:**
   (a)    Physical loss and/or damage to the vessel or watercraft chartered to or used by the Assured, including demurrage.

   (b)    Loss of life and/or personal injury and/or illness and/or **property damage** (including damage to vessels other than those referred to in 1.a. above)

   Howsoever caused and occurring during the period of this policy arising out of, or having relation to the Assured's chartering, towing, berthing, servicing, operating, maintenance and/or use of vessels (including loading and/or unloading).

(See Exhibit "C" at p. 2 and Exhibit "D" at p. 12) (*emphasis added*.)

The policy provides coverage up to $1,000,000.00 for property damage under the

MARINE OPERATOR'S/CHARTER'S LIABILITY clause. (See Exhibit "C" at p. 2 and

Exhibit "D" at p. 12.)

The hull section of the policy also incorporates the American Institute TUG FORM

which further defines the nature of the coverage provided by Boston Old Colony. (See

Exhibit "C" at pp. 4 through 8, and Exhibit "D", pp. 2 through 6.) The American Institute

Page -7-

TUG FORM describes the assured's coverage for collision and tower's liability, in pertinent

part, as follows:

## COLLISION AND TOWER'S LIABILITY

And it is further agreed that:

(a)     If the vessel hereby insured ... shall strand her tow ... and the Assured, or the Surety, in consequence of the insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums, we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the Vessel hereby insured ...

(See Exhibit "C" at p. 5 and Exhibit "D" at p. 3.)

Bean submits that the claims asserted by the Florida Department of Environmental

Protection which allege property damage as the result of prop wash by Central Gulf's

towing vessels and/or maneuvering of barges and/or dredge equipment into mangrove

trees fall within the coverage under the Collision and Tower's Liability clause.

## Coverage under Boston Old Colony P&I Policy:

The protection and indemnity ("P&I") section of the policy likewise includes coverage

for property damage. The P&I coverage is described in another insurance form, the "SP-

23". (See Exhibit "C" at pp. 9 through 11 and Exhibit "D" at pp. 7 through 11.) Coverage

for property damage is found in paragraph 6 which memorializes the liability of Boston Old

Colony for "Liability for damage to any ... property whatsoever ..." (See Exhibit "C" at p. 9 and Exhibit "D" at p. 7.)

Paragraph 4 of the SP-23 was also amended so as to provide additional coverage for property damage, in excess of coverage under the Collision Liability and Tower's Liability section of the American Institute TUG FORM of the hull section of the policy. (See Special Provisions and Exclusions, paragraph C, Exhibit "C", p. 16 and Exhibit "D", p. 19.)

Boston Old Colony provides coverage up to $1,000,000.00 for the risks insured under the P&I section of the policy. (See Special Provisions and Exclusions at Exhibit "C", p. 16 and Exhibit "D", p. 19.) Clearly, the property damage claims asserted against Bean by the Florida Department of Environmental Protection are covered under these several clauses within the hull and P&I sections of the Boston Old Colony policy. (See Exhibit "A".)

**Boston Old Colony Has Refused to Defend and Indemnify Bean:**

On October 1, 1999, Bean notified Coastal Insurance Services, Inc., the producer of the Boston Old Colony policy, of the property damage claims asserted by the Sate of Florida and requested that the insurance underwriters respond, appropriately. (See correspondence of Mr. William D. Hoffman, attached hereto as Exhibit "H".) Rather than honor its obligations under its policy, Boston Old Colony responded with this declaratory judgment action. Central Gulf joined Boston Old Colony in this action, and both seek to

have Boston Old Colony relieved of liability for the property damage claims asserted against its assured, Bean.

Boston Old Colony and Central Gulf do not contend that the underlying property damage claims are not included in the coverage afforded under Boston Old Colony's policy H814628. Rather they argue that the coverage under the policy should be restricted so as not to include these claims because of the language contained in the Charter Agreement entered into between Central Gulf and Bean, which sets forth the **minimum** required coverage those parties were required to obtain. In other words, Boston Old Colony and Central Gulf have taken the unsupportable position that this Court should ignore the clear and unambiguous language of the Boston Old Colony policy simply because the policy affords Bean greater protection than does the underlying contract.

Realizing the likelihood that coverage will be found in favor of Bean, Boston Old Colony argues, in the alternative, its coverage should be considered excess or *pro rata* with coverage under Bean's own policy. These claims can be easily dismissed given the clear language in both policies to the effect that Boston Old Colony's policy affords primary coverage, and Bean's own insurance is excess. (See discussion at pp. 5 and 6, *supra*.)

### BEAN IS LEGALLY ENTITLED TO COVERAGE
### UNDER BOSTON OLD COLONY POLICY

Central Gulf and Boston Old Colony initiated these proceedings to obtain a declaration concerning the extent of coverage under their policy and a further declaration

that Bean was obligated to obtain insurance coverage for property damage claims of third

parties.  Bean filed a counterclaim against Boston Old Colony on the grounds that it is

entitled to insurance coverage under the Boston Old Colony policy.

Although the Complaint requests a declaration concerning Bean's insurance

obligation,  the only real issue before the Court is the question of coverage in favor of Bean

under the Boston Old Colony policy.  Whether Bean obtained the coverages required of

it under the Charter Agreement is not a material issue in these proceedings.  Central Gulf

does not allege that Bean failed to obtained its mandated insurance coverages.  Bean's

insurers are not parties to this litigation and the Court has not been called upon to interpret

the coverages under the policies issued by Bean's insurers.  Assuming for purposes of this

Motion that Bean obtained its required insurance, such insurance is not relevant to this

motion because such coverages would nonetheless be excess to the primary insurance

afforded by Boston Old Colony.


**Boston Old Colony is Bound by the Terms of Its Policy:**

Under Louisiana law, a contract of insurance, like any other contract, constitutes the

law between the parties and is enforced according to the wording of the policy.  *Farrell*

*Lines v. Insurance Co. of North America*, 600 F. Supp. 740, 745 (E.D. La. 1985), *aff'd in*

*part and rev'd in part on other grounds*, 789 F. 2d 300 (5th Cir. 1986) (*citations omitted*).

In the case at bar, Boston Old Colony's true intent to provide insurance coverage for Bean

is clearly expressed in the policy, wherein it recognizes coverage for Bean as an additional

assured. (See Exhibit "C" at p. 12 and Exhibit "D" at p. 15.) Thus, as an assured under Boston Old Colony's policy, Bean is entitled to a defense and indemnity by Boston Old Colony for the claims asserted against Bean by the Florida Department of Environmental Protection. *Saavera v. Murphy Oil U.S.A., Inc.*, 930 F. 2d 1104, 1110 (5th Cir. 1991).

In determining the duty to defend, the court should assume the truth of the claims asserted against the assured. *Scarborough v. Northern Assur. Co. of America*, 718 F. 2d 130, 134 (5th Cir. 1983) *(citation omitted)*. Furthermore, the allegations against the assured should be liberally construed in determining whether they set forth grounds which bring the claim within the scope of coverage. *Scarborough*, 718 F. 2d at 134. **An insurer must provide its insured with a defense unless the claim is unambiguously excluded from coverage.** *Scarborough*, 718 F. 2d at 134 (*emphasis added*).

In the present matter, the claim asserted against Bean by the Florida Department of Environmental Protection clearly sets forth a liability for damage which falls within the scope of coverage under the Boston Old Colony policy. The claim alleges property damage as a result of vessel activities during the Florida Project. Bean submits that the allegations more pointedly implicate Central Gulf than Bean considering that the claim alleges property damage from prop wash and the maneuvering of barges by tugs. As reflected in the Charter Agreement, it was Central Gulf, and not Bean, who operated the tugs on the Florida Project which would have caused the property damage complained of. Based on the assumption that these allegations are true, which is required by the Court, Bean is entitled to coverage under the Boston Old Colony policy.

Boston Old Colony has not avered, in the complaint for declaratory relief, that its policy does not cover the types of claims asserted against Bean by the Florida Department of Environmental Protection. As previously quoted,[5] the Boston Old Colony policy provides for a deletion of the "as Owner" limitation in favor of Bean, consistent with the Charter Agreement requirements.[6]  Therefore, Bean is insured under the Boston Old Colony policy even though Bean was not the owner or operator of Central Gulf's vessels.

## Central Gulf/Bean Charter Agreement Does Not Restrict the Coverage Afforded to Bean under Boston Old Colony Policy:

Boston Old Colony and Central Gulf's position is that coverage under the policy should be limited because of certain provisions the Charter Agreement between Central Gulf and Bean.  Bean respectfully submits that the coverages afforded it by Boston Old Colony are not restricted by the provisions of the Charter Agreement.

Under the well established law in the Fifth Circuit, a party's entitlement to insurance coverage as an additional assured takes priority over obligations in an underlying agreement between the additional assured and the primary assured.  This issue was the focal point in the U.S. Fifth Circuit's case of *Ogea v. Loffland Bros. Co.*, 622 F. 2d 186.  In

---

[5]     See policy excerpt quoted at Page 5 of this Memorandum.

[6]     The Charter Agreement provides in pertinent part:

16.     The coverage afforded to such additional assureds in the insurances required by this contract shall be in all respects and in all events identical with the coverage afforded the owner of the vessels named herein, and any limitation of coverage to loss, damage, or expense under the "as Owner" or any other provision herein inconsistent with the coverage of such additional insureds identically with owners shall, as to such additional assured, be deemed deleted.

that case, Loffland and Phillips Petroleum Company entered into a contract whereby Loffland was to operate an offshore fixed platform owned by Phillips. Their contract included reciprocal indemnity provisions whereby Loffland agreed to protect, indemnify and defend Phillips from any and all claims asserted by Loffland's or its subcontractor's employees, agents, or invitees. Conversely, Phillips agreed to protect, indemnify and defend Loffland for claims asserted against Loffland by Phillips' or its subcontractors, employees, agents, or invitees. Their contract also included a provision that required Loffland to obtain liability insurance coverage which included Phillips as a named insured.

Loffland was sued by an employee of a Phillips subcontractor who sustained an accident and injuries aboard the platform. Loffland filed a third party demand against Phillips for a defense and indemnity pursuant to the contract. Phillips countered on the grounds that (a) it was protected by the insurance coverage Loffland was required to obtain pursuant to the underlying contract or (b) if Loffland had not obtained the required insurance coverage for Phillips, then Loffland was in breach of the contract which relieved Phillips of its defense and indemnity obligations. The district court rendered judgment in favor of Phillips, and the Fifth Circuit Court of Appeals affirmed.[7] *Ogea*, 622 F. 2d at 189, citing *Stewart v. Cran-Vela Rental Co., Inc.*, 510 F. 2d 982 (5th Cir. 1975).

The Fifth Circuit expressly recognized that Phillips would be "excused from liability" if it was covered by the insurance Loffland obtained pursuant to its obligations under their contract. The opinion did not reflect a specific finding that Loffland obtained insurance for

---

[7]    The Fifth Circuit reversed the district court's judgment insofar as it awarded Phillips attorney's fees, which were found not to be recoverable under the facts of the case.

Page -14-

the benefit of Phillips, but if a policy was in place, Phillips would have the benefit of that coverage for the underlying claim. *Ogea*, 622 F. 2d at 189. The Fifth Circuit also flatly rejected Loffland's claims that it was entitled to indemnity from Phillips pursuant to the obligations set forth in the drilling contract between the two parties. **The court explained that because the insurance required by Loffland for the benefit of Phillips covered the underlying personal injury claims, the indemnity provisions between the parties did not come into play.** Phillips was protected from any liability for which it was covered under the insurance policy procured by Loffland. *Ogea*, 622 F. 2d at 190.

The same conclusion was reached in the more recent Fifth Circuit case of *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F. 3d 552 (5th Cir. 1996), a case very similar to the pending matter. In *Tullier*, McCall Boat Rentals, Inc. ("McCall") and Halliburton Geophysical Services ("Halliburton") entered into a time charter agreement whereby McCall was to furnish a vessel to be used by Halliburton in connection with its offshore oil and gas operations. As with the Time Charter Agreement in the pending matter, the contract between McCall and Halliburton included reciprocal indemnity provisions and a requirement that each party obtain insurance coverage that would include the other as an additional assured. While both McCall and Halliburton were required to obtain insurance coverage for the benefit of the other, the nature of the insurance coverage was not identical. Also, the parties agreed that the insurance obtained by McCall would constitute primary coverage for the additional assured, Halliburton.

Page -15-

While the Charter Agreement was in effect, a Halliburton employee was injured aboard McCall's vessel. Halliburton and McCall settled with the personal injury claimant, then McCall pursued a claim against Halliburton for defense costs and indemnity for the personal injury claim. On cross motions for summary judgment, the district court found that because Halliburton was obligated to indemnify McCall for injuries to Halliburton's employee, Halliburton could not rely on the insurance coverage provided by McCall to fulfill its responsibility. Halliburton appealed, and the Fifth Circuit reversed.

In following the holding of *Ogea, supra*, **the *Tullier* court explained that Halliburton, as an additional assured under the liability policy obtained by McCall pursuant to the Charter Agreement, was entitled to coverage under McCall's insurance before its contractual indemnity obligations would be triggered**. *Tullier*, 81 F. 3d at 553, *citing Klepac v. Champlin Petroleum Co.*, 842 F. 2d 746 (5th Cir.) *reh'g denied*, 844 F. 2d 788 (5th Cir. 1988); *Woods v. Dravo Basic Materials Co.*, 887 F. 2d 618 (5th Cir. 1989).

The case of *Saavedra v. Murphy Oil USA, Inc.*, 930 F. 2d 1104 (5th Cir. 1991) is also on point here. In that case, Lou-Con, Inc. was performing contract work for Murphy Oil USA. Pursuant to their contract, Lou-Con agreed to defend Murphy in any lawsuits arising out of Lou-Con's operations or performance under the contract and to indemnify and hold Murphy harmless from any personal injury claims brought by Lou-Con's employees and subcontractors or any property damage claims arising out of Lou-Con's performance under

the contract. Lou-Con was also obligated to obtain liability insurance coverage, under

which Murphy was to be designated as an additional assured.

Murphy was sued by a Lou-Con employee, but was ultimately dismissed by

summary judgment. However, it made a claim for contractual indemnity and defense costs

against Lou-Con's liability insurer, National Union. National Union's policy provided that

"additional insureds are covered under this policy as required by *written contract* but only

with respect to operations performed by or for the main insured [Lou-Con]." (*emphasis in*

*original*) National Union argued that its obligations to Murphy, as an additional assured,

were limited based on provisions in Murphy's contract with Lou-Con. It specifically claimed

that Lou-Con's contractual obligations to Murphy did not encompass the underlying

personal injury claim.

The Fifth Circuit rejected National Union's position that coverage under its policy to

Murphy, an additional assured, was not owed because of limiting provisions in Murphy's

contract with Lou-Con. *Saavedra*, 930 F. 2d at 1110. The Fifth Circuit explained as

follows:

> National Union reads limitations in its omnibus insuring
> provision that are not there. That provision accomplishes two
> objectives. First, it describes who is included as an additional
> insured: "insureds are covered under this policy as required by
> written contract." No one disputes that Murphy achieved this
> status by requiring in its written contract that Lou-Con name
> Murphy as an insured. Second, the policy places a single
> limitation on its obligation to give Murphy (and others)
> additional insured status. The insured status arises only "with
> respect to operations performed by or for the named insured."
> By including this clause, National Union avoids the claim that
> it insures all of Murphy's liability even that arising from

Page -17-

operations unrelated to Lou-Con's work. Because the accident
Saavedra sues upon is directly related to Lou-Con's work, this
clause is satisfied, and the policy extends insured status to
Murphy.

**The plain policy language does not support National
Union's argument that its coverage of Murphy is limited to
the indemnity obligation Lou-Con assumed in its contract.
The insuring clause at issue simply does not adopt the
limiting language of the Lou-Con contract.** *See Forest Oil
Corp. v. Strata Energy, Inc.*, 929 F. 2d 1039 (5th Cir. 1991)
(interpreting an essentially identical clause providing coverage
"to those for whom the Named Insured has agreed in writing to
provide insurance in connection with such operations solely
done by the Named Insured"). Thus under the terms of the
National Union policy, Murphy was an additional insured,
entitled to both insurance coverage and defense for
Saavedra's suit. We therefore reverse the district court's
judgment on this issue and remand for the district court to
grant judgment in Murphy's favor, casting National Union for
Murphy's defense costs.

*Saavedra*, 930 F. 2d at 1110 (*emphasis added*).

Boston Old Colony's argument that it does not owe coverage to Bean in the pending

matter is nearly identical to the unpersuasive argument made by National Union and

rejected by the Fifth Circuit in the *Saavedra* case.   Like National Union, Boston Old

Colony's policy did not adopt any "limiting language" from the underlying contract. Boston

Old Colony suggests limitations in its insuring provision that are not there.   Similar to

Murphy in *Saavedra*, Bean's insured status arises "in respect of the insured  vessel(s)

employed by or actually working for the named additional assured, their affiliates...."

Because the claims asserted by the State of Florida are directly related to Central Gulf's

work, this clause is satisfied, and the policy extends insured status to Bean. Having

achieved such additional assured status, Bean is entitled to the broader protection afforded it under its contractor's policy.

The holdings of *Ogea*, *Tullier*, and *Saavedra* make clear that once a party to a contract is afforded insurance coverage as an additional assured under a policy obtained by its contractor, the additional assured is entitled to full insurance protection pursuant to the terms and limitations contained within the policy **itself** without consideration of any "limiting language" otherwise found in the underlying contract. These binding authorities dictate that, as an additional assured, Bean is entitled to the coverage afforded under the Boston Old Colony policy irrespective of the additional obligations between Bean and Central Gulf in their Charter Agreement.

The contention of Boston Old Colony and Central Gulf that Central Gulf was not required to obtain insurance coverage for property damage claims is irrelevant. As set forth in the Affidavit of Mr. Hoffman (Exhibit A), the insurance requirements set forth in the Charter Agreement represented **MINIMUM** requirements of the parties rather than a restriction or limitation of the coverages that might otherwise be available under the policies. Neither the Charter Agreement nor the policy itself states that Bean's insurance protection under the Boston Old Colony policy was restricted or otherwise limited to the contracted minimum coverages. By its own terms, the Boston Old Colony policy protects Bean as an additional assured and covers the underlying property damage claims asserted by the State of Florida.

## BOSTON OLD COLONY IS LIABLE FOR ATTORNEYS' FEES, COSTS AND STATUTORY PENALTIES FOR DENIAL OF BEAN'S CLAIM

An insurer's wrongful refusal to defend its insured subjects the insurer to attorneys' fees, costs and statutory penalties. La. R.S. 22:658 [8]. An insurer's arbitrary and capricious refusal to defend an insured has been held to subject the insurer to penalties, attorneys' fees and interest under this statute. *Hampton v. Rubicon Chemicals, Inc.*, 579 So. 2d 458 (La. App. 1st Cir. 1991). To date, Bean has incurred $60,457.71 in attorney fees and defense costs in connection with the Florida property damage claims. (See affidavit of Mr. William D. Hoffman, Exhibit "A".) Bean has also incurred additional attorney fees and costs in this action regarding its entitlement to coverage.

In the present matter, Boston Old Colony owes coverage to Bean based on the express provisions of its insurance policy. Notwithstanding Bean's demand, Boston Old Colony has refused to provide the appropriate coverage to which Bean is entitled. Moreover, Boston Old Colony has gone so far as to file suit against its insured in an effort to escape its obligations under its policy based on a theory which is clearly contrary to the

---

[8]    That statute provides, in pertinent part, as follows:

A.(1)    All insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

. . .

B.(1)    Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefore, as provided in R.S. 22:658 (A)(1) ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 10% damages on the amount found to be due from the insurer to the insured, or $1,000.00, whichever is greater, payable to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss ...

Page -20-

law of the Fifth Circuit. Bean submits that these actions on the part of Boston Old Colony

rise to the level of being arbitrary and capricious, thereby rendering Boston Old Colony

liable to Bean for statutory penalties, attorneys' fees and costs.

## CONCLUSION

In sum, there is no dispute that Bean was named as an additional assured under

Boston Old Colony's policy.  Whether the insurance coverage was broader than the

insurance required of Central Gulf is of no moment.  The fact remains that (1) Central Gulf

obtained the insurance pursuant to the Charter Agreement, (2) the Boston Old Colony

policy insures Bean, (3) the insurance includes coverage for the claimed property damage,

and (4) the coverage is primary to any other insurance which Bean may have obtained in

connection with the activities being carried out pursuant to the Charter Agreement and/or

the Florida Project.

The foregoing considered, Bean is entitled to judgment as a matter of law dismissing

the claims asserted by plaintiffs, Central Gulf Towing, Inc. and Boston Old Colony

Insurance Company.  Bean further avers that it is entitled to a judgment from this

Honorable Court declaring that Bean is entitled to insurance coverage and defense from

and by Boston Old Colony for the underlying third party claims for property damage that

have been asserted against Bean. Bean prays for judgment in its favor and against Boston

Old Colony for all sums that Bean has paid, shall pay and/or be required to pay in defense

of the third party property damage claims or by way of settlement and/or judgment and/or otherwise in connection with the underlying claims for property damage.

Bean further prays for an award of its attorney fees and costs incurred to date in defense of the Florida property damage claim in the amount of $60,457.71 and for such additional amounts to be presented hereafter to the Court in subsequent proceedings. Lastly, Bean prays for an award of statutory penalties and all attorney fees Bean has incurred in these proceedings, both in its defense of the Complaint of Boston Old Colony and Central Gulf and in the prosecution of its counterclaim.

Respectfully submitted,

ANDRÉ J. MOULEDOUX, T.A. (#9778)
DANIEL J. HOERNER (#21706)
MOULEDOUX,    BLAND,    LEGRAND    &
BRACKETT, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 595-3000
Facsimile:  (504) 522-2121
Attorneys for defendant/counterclaimant,
Bean Horizon L.L.C.
H:\0355\00121 Central Gulf\Pleads\msj-declaratory.wpd

Page -22-

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Motion for Summary and/or Declaratory Judgment, Notice of Hearing and Memorandum in Support of Motion for Summary and/or Declaratory Judgment on all counsel of record by mailing the same by United States mail, properly addressed and postage prepaid this ___21___ day of___August___, 2001.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CENTRAL GULF TOWING, INC. AND BOSTON OLD COLONY INSURANCE COMPANY | CASE NUMBER | 00-0305 |
| | SECTION | "F" |
| V. | | |
| BEAN HORIZON CORPORATION | MAGISTRATE | 3 |

## **STATEMENT OF UNCONTESTED FACTS**

Pursuant to Local Rule 56.1, defendant/counterclaimant, Bean Horizon L.L.C. (hereinafter "Bean"), submits this Statement of Uncontested Facts in connection with its Motion for Summary and/or Declaratory Judgment filed contemporaneously herewith:

1.    In 1998, Bean was hired by Martin County, Florida to perform work involving the dredging of the St. Lucie Inlet and restoration of the Jupiter Island Beach (hereinafter referred to as the "Florida Project");

2.   In furtherance of its work on the Florida Project, Bean entered into a Charter and Towing Agreement (hereinafter the "Charter Agreement") with Central Gulf Towing, Inc. (hereinafter "Central Gulf") whereby Central Gulf agreed to provide tugboats and personnel to transport and work with Bean's dredge and support equipment;

3.   The Charter Agreement required both Bean and Central Gulf to obtain certain types of insurance which would afford coverage to both parties in connection with their involvement in the Florida Project;

4.   Central Gulf obtained coverage from Boston Old Colony Insurance Company (hereinafter "Boston Old Colony") under a policy identified as policy no. H814628, which afforded coverage for the period of May 9, 1998 to May 9, 1999, and again from May 9, 1999 to May 9, 2000;

5.   The Boston Old Colony policy, no. H814628, was in effect during Bean's and Central Gulf's undertakings on the Florida Project;

6.   Bean was an additional assured under the Boston Old Colony policy, no. H814628;

7.   The Boston Old Colony policy, no. H814628, expressly provided that it was deemed primary insurance with respect to any other insurance obtained by Bean, as an additional assured;

8.    Bean had obtained insurance coverage, which expressly provided that it was only deemed to be in excess of any insurance under which Bean was an additional assured;

9.    Martin County, Florida issued written notice to Bean regarding a claim by the Florida Department of Environmental Protection alleged property damage resulting from or arising in connection with work on the Florida Project;

10.    The alleged property damage claim related to alleged damage to seagrass as a result of prop wash and mangrove damage resulting from the towage or maneuvering of barges or dredge equipment by towboats during the Florida Project;

11.    The Boston Old Colony policy, no. H814628, provides coverage for property damage claims;

12.    The amount of the property damage claim is less than the policy limits set forth in the Boston Old Colony policy;

13.    Bean notified Coastal Insurance Services, Inc., the producer of the Boston Old Colony policy, of the property damage claim asserted against Bean, as described above;

14.    Boston Old Colony has not afforded a defense and/or indemnity to Bean in connection with the underlying property damage claim, but rather initiated this declaratory judgment action in an effort to avoid having to provide coverage to Bean for the underlying property damage claim;

Page -3-

15.    To date, Bean has incurred $60, 457.71 in attorney's fees and costs in

connection with its defense of the underlying property damage claim, as

described above, as well as additional attorneys fees and costs in connection

with this action regarding Bean's entitlement to insurance coverage from

Boston Old Colony.


                            Respectfully submitted,


                            _____
                            ANDRE J. MOULEDOUX, T.A. (#9778)
                            DANIEL J. HOERNER (#21706)
                            MOULEDOUX,    BLAND,   LEGRAND   &
                            BRACKETT, L.L.C.
                            650 Poydras Street, Suite 2150
                            New Orleans, LA 70130
                            Telephone: (504) 595-3000
                            Facsimile:  (504) 522-2121
                            Attorneys   for  defendant,   Bean   Horizon
                            Corporation
                            H:\0355\00121 Central Gulf\Pleads\stmt uncontested facts.wpd


## CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the foregoing pleading on all counsel
of record by mailing the same by United States mail, properly addressed and postage
prepaid this _21_ day of _August_ , 2001.

                            _____

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED